## Johnstone Estate

*Duffy, McTighe & McElhone*, for petitioner.

FORREST, J., July 30, 1954.—This is a proceeding brought under section 331 of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.331, for the removal of the administrator of the estate of Frederick A. Johnstone, deceased.

From the petition and answer filed, and from the testimony, the facts and circumstances may be stated as follows:

Decedent died on March 28, 1953, a resident of Montgomery County. He left surviving him as his sole heir and next of kin a son, Frederick Johnstone, whose whereabouts have been unknown since the date of the decedent's death.

On April 13, 1952, decedent, while operating his automobile in Edgehill in this county, was involved in an accident allegedly resulting in damages to John Coleman and Eric Keiluhn, Jr., and Dolores, his wife. At the time of the accident, decedent was insured under a public liability insurance policy no. X 6261164-51 issued by Employers Liability Assurance Corporation.

On May 16, 1952, William T. Adis, Esq., an attorney with offices in Philadelphia, wrote to the aforesaid insurance company giving notice that he represented Coleman and the Keiluhns in the claims against Johnstone. He wrote similar letters to the insurance company on May 26, 1952, and on September 26, 1952. The company replied to Mr. Adis on October 6, 1952, and indicated a willingness to discuss the matter. Thereafter, Mr. Adis attempted to negotiate a settlement and arranged for a medical examination of Mrs. Keiluhn by a physician engaged by the insurance company. Although Adis used all reasonable efforts he was not able to effect a settlement.

On March 9, 1954, almost a year after the death of Frederick A. Johnstone, Mr. Adis went to the office of the Register of Wills of Montgomery County, together with his local associate, Malcolm Campbell, Esq. They informed Raymond Hunsberger, deputy register of wills, that Mr. Adis was an attorney who represented a claimant against decedent's estate, that the whereabouts of decedent's next of kin was unknown, and that it was necessary that letters of administration be granted on decedent's estate. The petition for letters of administration, however, stated that the petitioner, Mr. Adis, was a creditor of the estate which

was not a fact. Malcolm Campbell, Esq., a reputable member of this bar, testified that Mr. Adis orally represented himself to Mr. Hunsberger as an attorney for a creditor, not as a creditor himself. Letters of administration were issued forthwith to Mr. Adis.

After the issuance of letters of administration, Mr. Adis arranged to have a suit filed by Edwin Segal, Esq., of Camden, N. J., in the Superior Court of New Jersey, Law Division, Camden County, docket no. L6718-53, in behalf of Coleman and the Keiluhns against Adis, administrator of decedent's estate as such. Adis went to the Walt Whitman Hotel, Camden, N. J., and voluntarily subjected himself to service of the summons and complaint in said suit on March 26, 1954. Decedent's liability insurance carrier subsequently filed the petition for removal of the administrator and this is before us for disposition.

Section 305 of the Fiduciaries Act, supra, provides, inter alia, that:

"Letters of administration shall be granted by the register, in such form as the case shall require, to one or more of those hereinafter mentioned and, except for good cause, in the following order:

"(1) Those entitled to the residuary estate under the will;

"(2) The surviving spouse;

"(3) Those entitled under the intestate law as the register, in his discretion, shall judge will best administer the estate . . .

"(4) The principal creditors of the estate;

"(5) Other fit persons;

"(6) If anyone of the foregoing shall renounce his right to letters of administration, the register, in his discretion, may appoint a nominee of the person so renouncing in preference to the persons set forth in any succeeding clause."

It appears that Mr. Adis qualified as administrator under subparagraph (5) as an "other fit person". Of course, a stranger or meddler has no rights to letters of administration. However, under the circumstances disclosed by this case, we cannot say that Mr. Adis should be considered as a meddler. The period of limitations for the institution of suit by his clients had almost expired and he was properly concerned about having an administrator promptly appointed. We express no opinion on the wisdom of his seeking to have himself appointed as administrator. Certainly it is conceivable that he could have done so and at the same time he could have retained totally disinterested counsel to represent the estate in any action by his clients against the estate, although notwithstanding, a nice question of legal ethics might still be raised.

"It is unprofessional to represent conflicting interests, except by express consent of all concerned given after full disclosure of the facts." *Canon 6 of Canons of Professional Ethics.*

Can it be said that since in one of his two capacities Mr. Adis is acting as administrator and not as his own attorney he is not *representing* conflicting *interests?* We think not. Such an argument is specious.

In light of the foregoing, the administrator should be removed. Section 331 of the Fiduciaries Act of 1949, supra, 20 PS §320.331, provides, inter alia, that:

"The court shall have exclusive power to remove a personal representative when he . . .

"(1) is wasting or mismanaging the estate . . . or . . .

"(5) When, for any other reason, the interests of the estate are likely to be jeopardized by his continuance in office."

It has long been well established that where interests of the personal representative and the estate are conflicting the court has discretion to remove the per-

sonal representative. Dayton's Estate, 1 Kulp 118 (1881). A claim of interest hostile to the estate is sufficient to disqualify a person to administer: Friese's Estate, 317 Pa. 86, 89 (1934). See, also, Fleming's Estate, 135 Pa. Superior Ct. 423 (1939).

In the absence of evidence to the contrary, it would appear that the evident coöperation of the administrator of a Pennsylvania estate resulting in subjecting the estate to the jurisdiction of a foreign court in a metropolitan neighborhood where circumstances might reasonably appear to be less favorable to the estate than in Montgomery County was an action antagonistic and hostile to the best interests of the estate. The personal interest of the administrator is antagonistic to his duties as such and, since his adverse interest may interfere with a proper administration of the estate, it is a clear case for removal in the discretion of the court: Sharpless' Estate, 209 Pa. 69 (1904). The most conscientious person might have great difficulty in ascertaining whether what virtually amounts to self-dealing is likely to jeopardize the interests of the estate and the court should discourage practices creating temptations to compromise the interests of estates within its jurisdiction.

"The manifest purpose of the act is that the supervision and control of the estate should be committed to those who are directly interested in its management and preservation. And this we cannot overlook nor disregard": Padelford's Estate, 189 Pa. 634, 637 (1899).

### Order

And now, July 30, 1954, it is ordered, adjudged and decreed that William T. Adis, Esquire, is hereby removed as administrator of the estate of Frederick A. Johnstone, deceased. Exception to William T. Adis, Esq.